# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE COZAD, | Case No. 1:14-cv-02049-SKO |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | (Doc. 30) |
| ASTRAZENECA LP, and DOES 1 through 50, inclusive, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Katherine Cozad ("Plaintiff") brings this action against AstraZeneca, LP ("Defendant"), alleging that Defendant failed to take necessary and reasonable precautions to protect Plaintiff from the sexual assault by a physician with whom she was in contact due to her employment by Defendant. (*See generally* Doc. 1, Exh. A (Complaint).)  On July 15, 2016, Defendant filed a motion for summary judgment.  (Doc. 30 (Motion).)  On August 3, 2016, Plaintiff filed her opposition, and on August 10, 2016, Defendant filed its reply.  (Docs. 39 (Opposition); 48 (Reply).)  Having reviewed the parties' papers and all supporting material[1], the

---

[1] This Court has reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections, and other papers filed by the parties.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper.  Although this Court has also reviewed, considered and applied the evidence it deemed admissible and material, it does not rule on objections in a summary judgment context, unless otherwise noted.

matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing was vacated.

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

## II. BACKGROUND

Plaintiff was employed by Defendant as a Pharmaceutical Sales Specialist ("PSS") assigned to make sales calls in the Fresno, California area. (Compl., ¶ 9; Doc. 30-1 (Joint Statement of Undisputed Material Facts ("JUMF")), ¶¶ 5-6.) In October 2013, Plaintiff made a routine sales call to a family practice physician ("Physician") at his office. (Compl., ¶10; JUMF, ¶ 52.) Plaintiff alleges that during this sales visit, Physician sexually assaulted Plaintiff by grabbing her face and forcibly kissing her, and by rubbing himself against her body and genitals. (*Id.*) Plaintiff was diagnosed with post-traumatic stress disorder as a result of the assault. (Compl., ¶ 17.) Plaintiff alleges that her experience with Physician had devastating effects on her personal and professional life and ultimately led to the termination of her employment with Defendant. (*Id.*, ¶¶ 38, 43.)

On November 14, 2014, Plaintiff filed this action against Defendant, after having requested and obtained an immediate Right-to-Sue notice[2] from the Department of Fair Employment and Housing ("DFEH") on or about August 2, 2014. (*Id.*, ¶¶ 5-6.) Plaintiff alleges Defendant unlawfully discriminated against her based on gender, failed to take reasonable steps to prevent Plaintiff's assault by Physician, and did not reasonably accommodate her resultant medical condition. (*Id.*, ¶¶ 37, 44, 49.) Plaintiff seeks compensatory damages, declaratory relief, exemplary damages, and attorney's fees and costs as a result of Defendant's alleged acts and omissions. (*Id.*, 12:2-14.)

//

---

[2] Employees who believe they have been discriminated against generally have 180 days in which to file an administrative complaint with the DFEH, the agency charged with administering the California Fair Employment and Housing Act. The DFEH is obligated to investigate each complaint and decide whether to file an accusation or a "right-to-sue notice" which enables the complaining employee to pursue charges on his or her own behalf. This administrative process is a prerequisite to filing suit for a charge of discrimination.

On July 15, 2016, Defendant filed its motion for summary judgment, contending that it is "absolutely" not liable for the undeniable wrongful acts of Physician, who is a third-party. (Mot.) Plaintiff filed her opposition to Defendant's motion for summary judgment on August 3, 2016. (Oppo.) Plaintiff asserts that material facts are in dispute as to her four causes of action and that summary judgment is inappropriate. (*Id.*)

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.* (internal quotation marks and citation omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007).

If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323); *see also James River Ins. Co. v. Schenk, P.C.*, 519 F.3d 917, 925 (9th Cir. 2008); *Nissan Fire & Marine Is. Co. v. Fritz Cos.*, 210

F.3d 1099, 1105-06 (9th Cir. 2000).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences are not, however, drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Juell v. Forest Pharms., Inc.*, 456 F. Supp. 2d 1141, 1149 (E.D. Cal. 2006); *UMG Recordings, Inc. v. Sinnott*, 300 F. Supp. 2d 993, 997 (E.D. Cal. 2004).

"A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *Del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 23 (1st Cir. 2002); *see Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1167 (9th Cir. 2002). "[B]ald assertions or a mere scintilla of evidence" will not suffice. *Stefanchik*, 559 F.3d at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249-50; *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006). The Court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. S*ee Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to produce evidence

sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire*, 210 F.3d at 1103; *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV.   DISCUSSION[3]

Defendant seeks summary judgment on Plaintiff's claims for discrimination, failure to prevent harassment, failure to accommodate, and intentional infliction of emotional distress. (Mot.)  Plaintiff contends summary judgment is inappropriate because material facts remain in dispute as to all four causes of action. (Oppo.)

**A.   Discrimination**

Plaintiff alleges Defendant unlawfully discriminated against its female PSSs "by deliberately assigning attractive female representatives to call upon male doctors who were known to make inappropriate sexual comments and advances toward female representatives . . . and then require them to visit those doctors unaccompanied." (Compl., ¶¶ 26-27.)  Due to Defendant's practice, Plaintiff "was regularly subjected to harassment and unwelcome sexual advances by doctors" and was "[u]ltimately [ ] sexually assaulted by a doctor and [ ] consequently diagnosed with post-traumatic stress disorder." (*Id.*, ¶ 29.)

Defendant seeks summary judgment on Plaintiff's claim for discrimination on the basis of sex, contending that there is no genuine dispute of material fact as to whether Defendant treats its female and male employees differently. (Mot.)  Plaintiff contends there remains a disputed material fact as to where Defendant "deliberately assign[s] female PSSs to call on male medical professionals that make inappropriate sexual comments or advances toward female representatives." (Doc. 41 (Plaintiff's Statement of Disputed Facts ("PDMF")), ¶ 7.)  Plaintiff contends that the options presented to a female PSS who feels uncomfortable calling on a physician, to either request the physician be taken off their call list or call on the physician in pairs

---

[3] As discussed in the Court's order on Plaintiff's motion for summary judgment, filed concurrently herewith:

> . . . because the amount paid to Plaintiff under the Settlement Agreement with Physician is undifferentiated between economic and noneconomic damages, the Court cannot determine Defendant's entitlement to offset under section 877, if any, until *after* it receives the jury's verdict. [Citation.] Defendant may or may not be entitled to offset a judgment against it by some amount of the settlement between Physician and Plaintiff, depending on how the jury allocates the award. At any rate, the Court is unable to make such determination at this stage of the proceedings.

(*See* Doc. 52, pp. 8-9.)  Therefore, the Court will not address herein Defendant's arguments regarding the offset issue.

with another PSS, unfairly "burden and disadvantage female employees versus male employees in a sales environment." (Oppo., pp. 9-10.) Defendant responds that Plaintiff fails to explain how these options disparately impact female PSSs, and that such options are in any event irrelevant to Plaintiff's discrimination claim because Plaintiff does not assert discrimination based on Defendant's preventative measures. (Reply, p. 2.) Plaintiff accuses Defendant of "blatant victim blaming," which she contends is illustrative of Defendant's pattern and practice. (Oppo., p. 11.) Plaintiff's hyperbole notwithstanding, Plaintiff has offered *no evidence* to demonstrate the existence of any material fact as to whether Defendant treated its employees differently on the basis of sex.

### 1.  Legal Standard

FEHA makes it unlawful for "an employer, because of . . . sex . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). To make a prima facie showing of sex discrimination, a plaintiff must:

> . . . provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 355 (2000); *Nielsen v. Trofholz Techs., Inc.*, 750 F. Supp. 2d 1157, 1165 (E.D. Cal. 2010), aff'd, 470 F. App'x 647 (9th Cir. 2012). The standard for determining whether an employee has been subjected to an "adverse employment action" is whether the employment action materially affected the "terms and conditions of employment," with that term being liberally construed to afford employees "appropriate protection against employment discrimination." Cal. Govt. Code §§ 12940(a) and (h); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005). California courts have held that termination, dissemination of a negative employment reference, and issuance of a negative performance evaluation constitute adverse employment actions. *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000). Further, "[w]hat matters [ ] is not whether the two sexes are treated *differently* in the workplace, but whether one of the sex is treated *adversely* to the other sex in the workplace because of their

sex."  *Kelley v. Conco Companies*, 196 Cal. App. 4th 191, 207 (2011) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279-80 (2006)).

### 2. Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Discrimination

Though Plaintiff "disputes" whether Defendant "deliberately assigns female PSSs to call on male medical professionals that make inappropriate sexual comments or advances toward female representatives," Plaintiff identifies no evidence or testimony contradicting that fact. Rather, it is *undisputed* that "Defendant does not treat female PSSs differently from male PSSs by disproportionately assigning female PSSs to call on male medical professionals" and that "[n]either the sex/gender of the PSS nor the sex/gender of the medical professional are factors considered by Defendant when making call plans for PSSs." (*Compare* Doc. 30-2 (Defendant's Separate Statement of Undisputed Facts ("DSUMF")), ¶ 6 *with* Doc. 40 (Plaintiff's Response to Defendant's Separate Statement of Material Facts ("PSUMF")), ¶ 6 (facts are "undisputed"); *see also* Doc. 30-3 (Declaration of Karen Belknap in Support of Defendant's Motion), ¶ 34.)

It is also *undisputed* that "Defendant does not factor 'attractiveness' when making call plans for PSSs" (*Compare* DSUMF, ¶ 8 *with* PSUMF, ¶8 (undisputed); *see also* Belknap Decl., ¶ 36;), that call assignments are based on geographical territories, *not* sex or gender, and that "the PSSs assigned to the territory decide amongst themselves which of the members of their group will call on each particular physician" (Doc. 42 (Plaintiff's Declaration in Opposition to Defendant's Motion), ¶¶ 5-6).  Further, two of the four PSSs that shared the territory with Plaintiff were male.  (JUMF, ¶ 13.)

Plaintiff has failed to rebut Defendant's affirmative evidence that female PSSs were treated the same as male PSSs.  Plaintiff's contention that "[a] jury should be allowed to consider Defendant's offensive arguments blaming the victim for the sexual assault she endured and its inequitable treatment of its female employees" *does not* demonstrate the existence of a genuine dispute of material fact as to whether Defendant's female PSSs were "disproportionately" adversely effected by Defendant's *universal* practice: *all* PSSs – male or female – had the options

of either removing problematic physicians from their call lists or visiting such physicians in pairs. In sum, summary judgment is warranted on this cause of action.

**B.     Failure to Prevent Harassment**

Plaintiff alleges that Defendant failed to prevent harassment by: (1) failing to provide Plaintiff with employment where she could work free from unlawful harassment, (2) failing to take appropriate action when it knew or should have known of the unlawful harassment against Plaintiff, (3) failing to adopt, disseminate, adhere to, or enforce effective policies with respect to its duty to prevent unlawful harassment, and (4) aiding and abetting unlawful harassment. (Compl., ¶ 33.)  Plaintiff alleges that as a result of Defendant's failure to take reasonable steps to prevent the harassment of its PSSs by Physician, Plaintiff was "sexually assaulted and harassed" by Physician, leading to a "debilitating struggle with post-traumatic stress disorder, which prevented Plaintiff from performing the duties of her job." (*Id.*, ¶ 37-38.)

Defendant contends it took all reasonable steps to prevent the harassment from occurring, and that even if it failed to take such reasonable steps, its failure to do so was not a substantial factor in causing Plaintiff's harm.  (Mot., pp. 13-14.)  Plaintiff contends Defendant failed to take "all reasonable steps" to prevent harassment because (1) it did not distribute anti-harassment policies to physicians called on by its PSSs even when those physicians were known to have engaged in harassing conduct and (2) Defendant did not investigate or admonish Physician despite two earlier reports of sexual harassment or attempted sexual harassment. (Oppo., p. 12.)  Plaintiff further contends that by failing to meaningfully address Physician's harassing behavior, Physician became emboldened and escalated his behavior, so that "a reasonable jury could conclude that Defendant actually contributed to Plaintiff's assault, in addition to failing to prevent it." (*Id.*)

   **1.     Legal Standard**

It is an unlawful employment practice under FEHA "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring" in the workplace.  Cal. Govt. Code § 12940(k).  When a plaintiff seeks to recover damages based on a claim of failure to prevent discrimination or harassment she must show three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take

8

all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm. *Ortiz v. Georgia Pac.*, 973 F. Supp. 2d 1162, 1185 (E.D. Cal. 2013); *Lelaind v. City & Cty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008) (citing California Civil Jury Instructions (BAJI) 12.11).

An employer may raise an affirmative defense to a charge of failure to prevent harassment by demonstrating (1) "'that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior'" and (2) "'that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 877 (9th Cir. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Whether the employer has a stated anti-harassment policy is relevant to the first element of the defense. *Id*. And an employee's failure to use a complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense." *Id*.

### 2. Summary Judgment Is Inappropriate on Plaintiff's Second Claim for Failure to Prevent Harassment

It is undisputed that Defendant required new employees, including Plaintiff, to receive three weeks of orientation and training that included training on Defendant's sexual harassment and discrimination prevention and reporting policies. (JUMF, ¶¶ 7-12.) These policies provided multiple avenues for employees to report harassment, and ensured confidentiality and non-retaliation. (JUMF, ¶¶ 17-31; PSUMF, ¶¶ 2-4; *see also* PDMF, ¶¶ 2-4 (conceding such policies exist but disputing insofar as Plaintiff contends Defendant "consistently failed to follow its own written anti-harassment policies on several occasion").) Defendant also allowed its PSSs to stop calling on physicians who acted inappropriately, without requiring further explanation or justification, (JUMF, ¶¶ 32-36; PSUMF, ¶ 5; *see also* Doc. 30-4 (Declaration of Bren K. Thomas in Support of Defendant's Motion), Exh. A (Deposition of Plaintiff), 42:1-43:14 (stating that she was free to stop calling on a physician if she wanted)), or to call on physicians in pairs (JSUMF, ¶ 37).

Defendant has provided sufficient evidence to demonstrate it "exercised reasonable care to prevent" sexually harassing behavior. *See Nichols*, 256 F.3d at 877 (employer's prevention steps are reasonable if it includes policies, training, reporting procedures and discipline). However, as noted above, Defendant must show that it "exercised reasonable care to prevent *and* correct promptly any sexually harassing behavior." *Ellerth*, 524 U.S. at 765 (italics added).

Defendant has shown that it acted to prevent sexual harassment generally, but not that it acted to promptly *correct* the alleged harassment. During all relevant time periods, Defendant provided mandatory sexual harassment training for all of its employees and had a written anti-harassment policy that: (1) defined sexual harassment; (2) set forth a reporting procedure; (3) stated that employees who violate the policy will be disciplined; and (4) assured employees that no reprisals would be made against them for making a complaint of sexual harassment. (JUMF, ¶¶ 7-12, 17-31.) *See Nichols,* 256 F.3d at 878; *Montero v. Agco Corp.*, 192 F.3d 856, 862 (9th Cir. 1999) (finding a similar policy sufficient to support, in part, an affirmative defense).

The Court is unpersuaded that Defendant has adequately demonstrated it took any affirmative, reasonable steps to "end the harassment." In this circuit, as in others, "remedies [for sexual harassment] should be 'reasonably calculated to end the harassment.'" *Ellison*, 924 F.2d at 882 (quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983)). The reasonableness of the remedy depends on its ability to: (1) "stop harassment by the person who engaged in harassment;" and (2) "persuade potential harassers to refrain from unlawful conduct." *Ellison*, 924 F.2d at 882. When the employer undertakes no remedy, or where the remedy does not end the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1528-29 (9th Cir. 1995).

Here, even assuming Defendant first learned of Physician's "propensity to engage in inappropriate behavior" after he assaulted Plaintiff in October 2013, there remains a genuine dispute as to whether Defendant took any action to *correct* the sexually harassing behavior. *Ellerth*, 524 U.S. at 765. Following Plaintiff's report of the incident, her supervisor reported the incident to human resources and advised Plaintiff she would not be required to call on Physician again. (JUMF, ¶ 68-75.) However, "[t]his solution did not remedy the harassment that had

already occurred, and was not adequate to deter future harassment." *Nichols*, 256 F.3d at 876. After the incident, Defendant did not question Physician, did not instruct him to change his behavior, continued to do business with Physician, and continued to send PSSs to call on him. (Doc. 43 (Declaration of S. Brett Sutton in Opposition to Defendant's Motion), Exhs. 4 (Deposition of Karen Belknap), 51:14-54:1, 62:7-63:13, 67:24-68:17 76:2-78:25; 5 (Deposition of Tina Forrest), 39:6-40:19, 45:3-14, 46:1-50:17.)  *See Nichols*, 256 F.3d at 876; *Intlekofer v. Turnage*, 973 F.2d 773, 779-870 (9th Cir. 1992) (noting that an oral rebuke, demand that the unwelcome conduct cease, and threat of disciplinary action may be sufficient to demonstrate defendant's prompt action to correct the harassment complained of).  Indeed, Defendant made no argument regarding its efforts to promptly *correct* the harassment of which Plaintiff complained, focusing instead on demonstrating that it took reasonable steps to *prevent* the harassment. (*See* Mot.; Reply.)

Because a reasonable factfinder could determine that Defendant failed to undertake any remedy whatsoever to end the current harassment and deter future harassment, *see Fuller*, 47 F.3d at 1528-29, summary judgment is inappropriate on Plaintiff's second cause of action for failure to prevent harassment.

**C.     Failure to Accommodate**

Plaintiff alleges that after the incident, she began suffering from "debilitating anxiety and severe panic attacks whenever she called on male doctors" and "began to experience emotional breakdowns outside doctors' offices and could not bring herself to enter enough offices each day to meet her sales quotas." (Compl., ¶ 13.)  After informing Defendant that she may be unable to continue calling on male doctors, rather than "make reasonable adjustments to Plaintiff's duties or work environment in order to reduce the level of stress she experienced in her job" which "would have permitted Plaintiff to continue her work for Defendant," human resources offered a separation package, which Plaintiff accepted. (*Id.*, ¶¶ 14-16.)  Plaintiff alleges Defendant failed to accommodate her disability or perceived disability. (*Id.*, ¶¶ 43-46, 48-51.)

//

//

11

### 1. Legal Standard

Under subsection 12940(m) of FEHA, it is unlawful for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee" unless the accommodation would "produce undue hardship." Cal. Gov't Code § 12940(m); *see also* Cal. Gov't Code § 12926(u) (defining "undue hardship"). "The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability." *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 373 (2d Dist. 2015).

"Although it is the employee's burden to initiate the process, no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider accommodation." *Scotch v. Art Institute of Cal.*, 173 Cal. App. 4th 986, 1013 (2009); *Wilson v. Cnty. of Orange*, 169 Cal. App. 4th 1185, 1195 (2009). Once the interactive process is initiated, the employer has a continuous obligation to engage in the process in good faith. *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 971 (2014); *Scotch*, 173 Cal. App. 4th at 1013. Once there has been an opportunity to conduct reasonable discovery on the issue, a plaintiff "must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." *Nealy*, 234 Cal. App. 4th at 379; *Scotch*, 173 Cal. App. 4th at 1018.

### 2. Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Failure to Accommodate

The first element in this case is undisputed, as the parties essentially agree Plaintiff suffered a disability for purposes of FEHA. As to the second element, sometime in late December 2013, Plaintiff requested a medical leave of absence and her doctors recommended, in lieu of possible job modifications, that Plaintiff be removed from work. (JUMF, ¶¶ 81, 82; Thomas Decl., Exh. H.) On May 8, 2014, Plaintiff's physician Dr. Wadja completed an "attending physician's statement of continued disability form" and, in response to a question seeking "examples of accommodations that would allow your patient to engage in social/occupational

activities," Dr. Wadja responded "N/A". (JUMF, ¶ 83; Thomas Decl., Exh. H.) Dr. Wadja further responded that Plaintiff's "return to work" target date was July 1, 2014. (JUMF, ¶ 85; Thomas Decl., Exh. H.) Plaintiff received short-term disability benefits through June 17, 2014. (JUMF, ¶¶ 86-87; Pl. Dep. 88:12-14, 94:15-21.) Plaintiff did not request any accommodation aside from the medical leave of absence, and did not request Defendant engage in the interactive process to identify other alternative accommodations. (PSUMF, ¶ 12 (undisputed); Belknap Decl., ¶ 32;)

Since Defendant provided the *only* accommodation requested by Plaintiff, Plaintiff fails to state a claim for failure to accommodate. *Scotch*, 173 Cal. App. 4th at 1013-14; *see also Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1252-53 (2008) ("[t]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and [then] sue the employer for not providing it"). Summary judgment is warranted on this cause of action.

**D.     Intentional Infliction of Emotional Distress**

Plaintiff alleges that as a result of Defendant's conduct, she has suffered severe emotional distress. (Compl., ¶¶ 53-56.)

   **1.     Legal Standard**

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). "'Severe emotional distress' means emotional distress of such substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051; *Potter*, 6 Cal. 4th at 1004. Conduct is "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal.4th at 1050; *Potter*, 6 Cal. 4th at 1001. Evidence that reflects "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" is insufficient. *Hughes*, 46 Cal. 4th at 1051. If properly pled, a claim of sexual harassment can establish "the outrageous behavior element of a cause of action for intentional

13

infliction of emotional distress." *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 618 (1989).

With respect to the requirement that the plaintiff show severe emotional distress, California courts have set a high bar. "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Potter*, 6 Cal. 4th at 1004 (internal quotation omitted).

### 2. Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Intentional Infliction of Emotional Distress

In evaluating Plaintiff's claim for intentional infliction of emotional distress, the Court must look to Defendant's conduct, not Physician's conduct. Looking solely to Defendant's conduct, it is undisputed that Defendant gave all its PSSs three options to avoid dangerous or uncomfortable situations: (1) refusing to call upon a particular physician, (2) only calling upon a particular physician in pairs, and (3) reporting any incidents of discomfort or harassment and initiating an investigation by human resources. (*See* JUMF, ¶¶ 11, 17-18, 21, 22, 23, 24, 26, 32, 37; Belknap Decl., Exh. C (copy of Defendant's code of conduct); Thomas Decl., Exh. B (Deposition of Robin Cunningham), 46:6-47:3, 47:16-25, 49:6-11 (testifying she stopped calling on a physician due to inappropriate comments he had made, and was never required to provide an explanation for her refusal to continue calling on him). It is undisputed that prior incidents involving Physician were not reported to Defendant's human resources department at the time they occurred. (JUMF, ¶¶ 43-47, ¶¶ 94-100; Cunningham Dep. 9:19-11:11, 15:3-16:20; Thomas Decl., Exh. C (Deposition of Melanie Livesay), 17:25-30:25.) It is further undisputed that when Plaintiff reported the incident to her supervisor, Holt, he told Plaintiff she would not have to call on Physician again and then immediately reported the incident to Defendant's human resources department. (JUMF, ¶¶ 68-72, 75; Pl. Dep. 73:20-78:6.)

Plaintiff contends a reasonable jury could find that Defendant's conduct was "outrageous and in reckless disregard of the probability of causing severe emotional distress" because "[n]otwithstanding its knowledge of Physician's proclivities and of the extremely serious nature [of] Physician's conduct, Defendant outrageously failed to take reasonable steps to prevent female

14

PSSs from calling on Physician." (Oppo., p. 16.) However, Plaintiff cites no evidence in support of her contention. Plaintiff does not identify any discrete act by Defendant intended to cause Plaintiff harm. Plaintiff's statement that Defendant's policy of allowing PSSs to refuse to call on any physician without explanation was "outrageous" does not make it so, and Plaintiff's accusation that Defendant knowingly put Plaintiff in a vulnerable position vis-à-vis Physician is belied by the undisputed evidence that both current employee Cunningham and former employee Livesay refused to report their respective encounters with Physician to Defendant's human resources department (JUMF, ¶¶ 43-47, ¶¶ 94-100; Cunningham Dep. 9:19-11:11, 15:3-16:20; Livesay Dep. 17:25-30:25).

Plaintiff has put forth no evidence demonstrating Defendant intentionally engaged in "extreme and outrageous conduct" sufficient to support a claim of intentional infliction of emotional distress. *Hughes*, 46 Cal. 4th at 1050; *Potter*, 6 Cal. 4th at 1001. Based upon the evidence before the Court, Plaintiff has failed to provide evidence of the existence of any material fact as to her claim for intentional infliction of emotional distress. Summary judgment is warranted on this cause of action.

## V. CONCLUSION

According, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, as follows:

1. Defendant's motion for summary judgment as to Plaintiff's second cause of action for failure to prevent harassment is DENIED; and
2. Defendant's motion for summary judgment as to Plaintiff's first cause of action for harassment, third cause of action for failure to accommodate, and fourth cause of action for negligent infliction of emotional distress is GRANTED.

IT IS SO ORDERED.

Dated: **August 30, 2016**                         /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE

3.